Case 2:14-cv-00323-KJN    Document 51    Filed 04/13/16    Page 1 of 14

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTA ANGELICA HURTADO,<br><br>        Plaintiff,<br><br>        v.<br><br>THE COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, SHERIFF SCOTT R. JONES in his official capacity, DEPUTY DAVID CUNEO in his official and individual/personal capacity, DEPUTY GRANT HANEY in his official and individual/personal capacity, DEPUTY ERIC DUNCAN in his official and individual/personal capacity, and DOES 1-100, Inclusive,[1]<br><br>        Defendants. | No.  2:14-cv-00323 KJM KJN<br><br><br><u>ORDER</u> |

I.    <u>INTRODUCTION</u>

        This matter is before the court on defendant Deputy David Cuneo's motion for summary judgment of plaintiff Marta Hurtado's excessive force claims. ECF No. 32-1. The

---

[1] The court has the authority to dismiss the Doe defendants sua sponte. *Craig v. United States*, 413 F.2d 854, 856 (9th Cir. 1969). Because plaintiff has not identified or served any defendants in lieu of the Does originally named, all Doe defendants are dismissed. *See* ECF 21 at 2 n.1.

1

1 matter was submitted after a hearing on October 30, 2015, at which Nolan Berggren appeared for
2 plaintiff Marta Hurtado while Wendy Motooka appeared for defendant Cuneo. ECF No. 42. As
3 explained below, the court GRANTS defendant's motion in part and DENIES it in part.

4  II.    JUDICIAL NOTICE

5 As a preliminary matter, the court resolves requests for judicial notice. Defendant
6 Cuneo requests the court judicially notice a plea of *nolo contendere* entered by plaintiff Marta
7 Hurtado. Req. Jud. Not. at 4, ECF 32-3. The request is unopposed.

8 As provided by Rule 201 of the Federal Rules of Evidence, a court may take
9 judicial notice of an adjudicative fact "not subject to reasonable dispute in that it is either
10 (1) generally known . . . (2) or capable of accurate and ready determination by resort to sources
11 whose accuracy cannot reasonably be questioned." *Images by Karen Marie v. Hartford Fin.*
12 *Servs. Grp., Inc.*, No. 12–3005, 2013 WL 1832772, at *2 (E.D. Cal. May 1, 2013). The court has
13 authority to judicially notice relevant "documents on file in federal or state courts." *See Harris v.*
14 *Cnty. of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012).

15 Plaintiff Hurtado's plea of *nolo contendere* is a matter of public record with the
16 Superior Court of California. *See* Req. Jud. Not. at 4. The fact of the entry of plea is not subject
17 to reasonable dispute, and is relevant to the analysis of plaintiff's excessive force claims.
18 Accordingly, the court takes judicial notice of the plea of *nolo contendere*.

19 III.    UNDISPUTED MATERIAL FACTS

20 The following facts are undisputed unless otherwise noted.

21     A.    Noise Complaint at Birthday Party

22 On April 20, 2013, plaintiff Marta Hurtado ("Ms. Hurtado") attended a birthday
23 party in Wilton, California. Hurtado Dep. 12:2–4, ECF No. 32-5. At least twenty-six people
24 were present at this party, including Ms. Hurtado's husband Octavio Palmas ("Mr. Palmas"). *Id*.
25 at 12:10–11; 17:1–18:17. Mr. Palmas was the disk jockey at the party. Cuneo Decl. ¶ 4, ECF
26 No. 32-4.

27 Between 10:00 and 10:30 p.m., Sacramento County Sherriff Deputy David Cuneo,
28 along with Deputies Eric Duncan and Grant Haney, came to the party in response to a noise

complaint. Cuneo Decl. ¶ 2. Upon arrival, the deputies informed Mr. Palmas they had received a noise complaint. *Id.* ¶ 3. Mr. Palmas agreed to turn down the music. *Id.* ¶ 3.

A short while later, the deputies returned to the party in response to a second noise complaint Cuneo says they received. *Id.* ¶¶ 5, 6. At approximately 11:40 p.m., the deputies again asked Mr. Palmas to turn down the music. *Id.* ¶ 6. In response, Mr. Palmas told the deputies they should leave because they had no right to be on his property. *Id.* ¶ 7. While Mr. Palmas was ordering the deputies to leave, Cuneo avers Mr. Palmas became irate and began acting in a disorderly fashion. *Id.* ¶ 8. As a result, Deputy Duncan arrested Mr. Palmas. *Id.* At the time this interaction occurred, Ms. Hurtado was away from the scene inside the house. Hurtado Dep. at 28:17–18, 38:13–14.

A crowd started to form while Deputy Duncan arrested Mr. Palmas. Undisputed Material Fact ("UMF") No. 4, ECF No. 37. The parties dispute whether the crowd started to yell at the deputies. Nonetheless, Deputy Cuneo stepped in as a buffer between Deputy Duncan and the crowd. UMF No. 3. Ms. Hurtado joined the crowd shortly after hearing of her husband's arrest, coming within an arm's length of Deputy Cuneo. UMF No. 6.

At this time, the crowd started to voice their distress, with members asking the deputies what was going on and why, telling deputies they were trespassing, and demanding the deputies leave. UMF No. 7. At the same time, Ms. Hurtado's aunt was screaming, yelling, and cursing at the deputies. UMF No. 8. At the time of her deposition, plaintiff described this scene as one of "chaos." UMF No. 9.

B. <u>Deputy Cuneo Pushes Ms. Hurtado to the Ground</u>

In the midst of the screaming and "chaos," Ms. Hurtado tried to get Deputy Cuneo's attention, specifically by raising her voice to be heard over the noisy crowd. UMF No. 10. Deputy Cuneo states he held up his hands and instructed Ms. Hurtado to stand back. Cuneo Decl. ¶ 11.[2] After Ms. Hurtado made several attempts to get Deputy Cuneo's attention,

---

[2] Ms. Hurtado disputes she received such an instruction. However, she does not cite evidence in support of her dispute. Therefore, the court construes Deputy Cuneo's statement as undisputed. *See Huynh v. J.P. Morgan Chase & Co.*, No. 06–0001, 2008 WL 2789532, at *15

3

Deputy Cuneo pushed her away. UMF Nos. 12, 13. Ms. Hurtado fell backwards to the ground and flat on her back. UMF No. 14; Hurtado Dep. 59:7–8. Deputy Cuneo states in his declaration he did not think his push would be sufficient to cause Ms. Hurtado to fall, particularly because of her large size. Cuneo Decl. ¶ 12. Ms. Hurtado is approximately five feet and nine inches tall, and weighs approximately 300 pounds. UMF No. 16.

C.  Deputy Cuneo Barricades Ms. Hurtado with a Couch

Shortly after her fall to the ground, Ms. Hurtado got up and proceeded to walk back to the house. UMF No. 17. Because Deputy Cuneo had pushed Ms. Hurtado to the ground, he needed to document his use of force. UMF No. 18. When seeing Ms. Hurtado walk back to the house, Deputy Cuneo states he directed plaintiff to stop and come back to him. Cuneo Decl. ¶ 15. Plaintiff disputes that Deputy Cuneo gave her this instruction. Hurtado Dep. at 60:12. After Deputy Cuneo's failed attempt to recall Ms. Hurtado, he followed Ms. Hurtado into the living room to arrest her for not complying with orders and for interfering with his ability to complete his report. UMF No. 21.

From this point in the encounter, the parties' versions diverge. Deputy Cuneo states when he entered the living room, he tried to speak with Ms. Hurtado but she kept circling around a couch. Cuneo Decl. ¶ 18. In order to stop Ms. Hurtado's from circling, Deputy Cuneo says he pushed the couch against a wall in the living room, effectively barricading plaintiff. *Id.* Ms. Hurtado disputes the couch was pushed against the wall. Hurtado Dep. at 60:15–21. Instead, she avers the couch was shoved into her side. *Id.* After the couch was pushed, Deputy Cuneo stepped up behind Ms. Hurtado and handcuffed her, led her to a patrol car, and wrote her a citation. UMF Nos. 26, 27. On August 16, 2013, Ms. Hurtado pled *nolo contendere* to the charges of resisting arrest and disturbing the peace. Req. Jud. Not. at 4.

---

(D. Ariz. July 17, 2008) (construing defendant's material fact as undisputed when plaintiff did not cite to record in support of a dispute).

Ms. Hurtado avers Deputy Cuneo's actions caused several injuries including a head concussion, bruising to her chest, bruising to her back, contusions and dizziness. Hurtado Dep. at 60:8–9; 79:11–24.

### D. Procedural Background

Ms. Hurtado filed this action on January 30, 2014. ECF No. 1. On August 30, 2014, she filed her first amended complaint. ECF No. 14. To the extent relevant to this motion, the first amended complaint alleges Deputy Cuneo committed excessive force in violation of the Fourth and Fourteenth Amendments, under 42 U.S.C. § 1983. *Id.* On September 24, 2015, Deputy Cuneo filed a motion for summary judgment. Mot., ECF No. 32-1. Plaintiff filed a response. Opp'n, ECF No. 35. Defendant Cuneo filed a reply. Reply, ECF No. 40.

## IV. LEGAL STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding whether an asserted evidentiary dispute is genuine, the court inquires whether a jury could reasonably find in the nonmovant's favor from the evidence presented. *Emeldi v. Univ. of Oregon*, 698 F.3d 715, 730 (9th Cir. 2012). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of showing the district court "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . . ; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the

material facts."). In addition to any cited material, the court may consider record materials not called to its attention by the parties. Fed. R. Civ. P. 56(c)(3). In requiring there be no genuine issue of material fact, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247–48.

In deciding a motion for summary judgment, the court does not weigh evidence or assess the credibility of witnesses; rather, it simply determines which facts the parties do not dispute. *Anderson*, 477 U.S. at 242. From the undisputed facts, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

V.  DISCUSSION

The court first considers whether Deputy Cuneo's push to the ground and push of the couch constituted excessive force. The court next determines whether Deputy Cuneo is immune from suit on grounds of qualified immunity. As explained below, the court concludes no reasonable factfinder could conclude Cuneo's push to the ground constitutes excessive force. On the other hand, disputed facts preclude a finding of summary judgment as to Deputy Cuneo's push of the couch, analyzed both in terms of the excessive force claim and the qualified immunity defense.

A.  Deputy Cuneo's Push to the Ground

As noted, Ms. Hurtado claims Deputy Cuneo committed excessive force in violation of the Fourth and Fourteenth Amendments. Opp'n at 4–6. Deputy Cuneo disputes the claim, arguing the undisputed material facts show his use of force was objectively reasonable under the circumstances. Mot. at 6–8.

The court begins by identifying the specific constitutional right infringed by the challenged application of force. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Not every

interaction between a police officer and a citizen calls for analysis under the Fourth Amendment, because not every interaction constitutes an arrest or seizure for purposes of the Fourth Amendment. *See County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998). A Fourth Amendment seizure occurs only when (1) there is a governmental termination of freedom of movement through means intentionally applied, and (2) a reasonable person would believe she is not free to leave. *Id.*; *United States v. Al Nasser*, 555 F.3d 722, 728-29 (9th Cir. 2007). If the Fourth Amendment applies, a plaintiff's excessive force claim will be judged under an objective reasonableness standard, which requires a balancing of the intrusion onto the individual's Fourth Amendment interests against the countervailing governmental interest at stake. *Graham*, 490 U.S. at 396.

If a claim is not covered by the Fourth Amendment, it will be subjected to a substantive due process analysis. *Cf. Lewis*, 523 U.S. at 843 ("Substantive due process analysis is . . . inappropriate . . . only if respondents' claim is covered by the Fourth Amendment."). The substantive due process component of the Fourteenth Amendment's Due Process Clause is violated only when law enforcement actions "shock the conscience" in that such actions are so "brutal" and "offensive" as to not comport with traditional ideas of fair play and decency. *Id.* at 847. This is a particularly high threshold, as activity likely rising to the conscience-shocking level only includes conduct reflecting deliberate indifference or intent or purpose to injure in some way that cannot be justified by any government interest. *Id.* at 849–51. A showing of "deliberate indifference" does not shock the conscience when accompanied by proof that "actual deliberation" was impractical. *Id.* at 851. In those instances, only "purpose" or "intent" to injure shocks the conscience. *Id.* at 853. Even when evidence of purpose or intent to injure is shown, the intent to inflict force must be unrelated to the legitimate object of law enforcement. *Porter v. Osborn*, 546 F.3d 1131, 1140 (9th Cir. 2008).

The court has an independent duty to apply the correct legal standard, lest it abuse its discretion. *See United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014) ("It is an abuse of discretion to apply the wrong legal standard." (citation omitted)). Both parties assume a Fourth Amendment seizure occurred, and engage in a Fourth Amendment objective reasonableness

1  analysis without determining as a threshold matter whether the reasonableness analysis applies
2  here.  Mot. at 6; Opp'n at 4.  Neither party shows how or why the Fourth Amendment applies
3  given the facts of this case.  As a threshold matter, therefore, the court itself determines whether
4  the Fourth Amendment is properly invoked when assessing Deputy Cuneo's push.  *See F.D.I.C.*
5  *v. Fid. & Deposit Co. of Md.*, 196 F.R.D. 375, 379 n.1 (S.D. Cal. 2000) (identifying and applying
6  the correct legal standard *sua sponte*).

7          Viewing the evidence in the light most favorable to the nonmoving party, the court
8  concludes the Fourth Amendment is not applicable to Deputy Cuneo's push of Ms. Hurtado to the
9  ground.  It may be true the deputy used force to terminate Ms. Hurtado's freedom of movement
10 by prohibiting her from coming closer than an arm's length to him.  That act, however, does not
11 constitute the type of stifled movement required to establish a seizure or detention for purposes of
12 the Fourth Amendment*.  See Al Nasser*, 555 F.3d at 728 (officer's conduct must constitute a
13 willful detention); *see also Gottlieb v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 172 (3d Cir.
14 2001) (concluding push by school administrator of student that propelled her backwards into a
15 door jam was not the "type of detention or physical restraint that we require to effectuate a
16 seizure" under the Fourth Amendment).  Additionally, in the absence of evidence that Deputy
17 Cuneo intended to detain Ms. Hurtado, no reasonable person in her situation would think she was
18 not free to leave.  Indeed, Ms. Hurtado did in fact leave the scene and walk back to her house.  No
19 seizure occurred for purposes of a Fourth Amendment excessive force claim.  Accordingly,
20 plaintiff's excessive force claim must satisfy substantive due process analysis to survive.

21         Under substantive due process analysis, however, Ms. Hurtado's claim based on
22 the push cannot survive summary judgment.  While it is true Deputy Cuneo's force was strong
23 enough to push her to the ground, such an exertion of force here does not rise to the conscience-
24 shocking level.  This is because the push took place amidst great noise and "chaos."  UMF No. 9.
25 In that environment, actual deliberation to effectuate order would have been impractical, for the
26 situation was "tense, uncertain, and rapidly evolving."  *Graham*, 490 U.S. at 396−97.  In light of
27 the circumstances, Ms. Hurtado must show Deputy Cuneo intended to cause harm.  *Lewis*, 523
28

U.S. at 853. Considering Ms. Hurtado's size, her fall to the ground, and the resulting injuries,[3] a reasonable factfinder could conclude Deputy Cuneo intended to push Ms. Hurtado to the ground.

Assuming intent, the evidence shows the minimally intrusive push was related to a legitimate law enforcement purpose. *See Porter*, 546 F.3d at 1140; *Jimenez v. City of Costa Mesa*, 174 Fed. Appx. 399, 402 (9th Cir. 2016). At the time of Mr. Palmas' arrest, Deputy Cuneo served as a buffer between the deputies and the crowd. UMF No. 3. Deputy Cuneo's serving as a buffer was for no reason other than to efficiently effectuate the arrest as well as calm the crowd. *See* Cuneo Decl. ¶¶ 8, 9. Considering the undisputed facts, no reasonable factfinder could conclude Deputy Cuneo's push was for a reason other than to effectuate Mr. Palmas' arrest and to calm the crowd, legitimate objects of law enforcement.

Deputy Cuneo's actions in this regard do not rise to the conscience-shocking level for purposes of substantive due process. Deputy Cuneo's motion for summary judgment with respect to the push to the ground is GRANTED.

B.     Deputy Cuneo Barricades Ms. Hurtado with a Couch

Ms. Hurtado contends Deputy Cuneo's act of barricading Ms. Hurtado with a couch constituted excessive force under the Fourth Amendment. Opp'n at 4. Deputy Cuneo disputes the claim, arguing his use of force here as well was objectively reasonable under the circumstances. Mot. at 7.

The court, as a threshold determination, concludes Deputy Cuneo's acts with respect to the couch do constitute a "seizure" within the meaning of the Fourth Amendment. In line with the Fourth Amendment principles articulated above, the undisputed material facts show Deputy Cuneo intended to terminate Ms. Hurtado's freedom through means intentionally applied, and a reasonable person under these circumstances would not feel free to leave. Shortly before Deputy Cuneo barricaded Ms. Hurtado against the wall with a couch, he was determined to arrest

---

[3] Again, Ms. Hurtado's injuries she says stem from Deputy Cuneo's acts included a head concussion, bruising to her chest, bruising to her back, contusions, and dizziness. Pl. Depo. at 60:8–9, 79:11–24. The evidence presented does not make clear whether such injuries stemmed from Deputy Cuneo's push to the ground, his push of the couch, or both. The court cannot find as a matter of law Ms. Hurtado's injuries stemmed only from the push to the ground.

or cite Ms. Hurtado for not complying with his orders and for interfering with his ability to complete his report regarding the push. UMF No. 21. Whether or not Deputy Cuneo pushed the couch into the wall or into the plaintiff, both parties agree Ms. Hurtado was effectively "barricaded" by Deputy Cuneo's actions. UMF No. 25. A reasonable factfinder could find these actions restricted Ms. Hurtado's movement, and a reasonable person would not have felt free to leave. A factfinder could thus find Deputy Cuneo's actions constituted a "seizure" within the meaning of the Fourth Amendment. *See Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994) ("[U]se of force to effect an arrest is subject to the Fourth Amendment's prohibition on unreasonable seizures."). The constitutionality of the deputy's actions thus will be assessed under the Fourth Amendment's objective reasonableness standard.

The objective reasonableness standard requires a balancing of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake. *Graham*, 490 U.S. at 396. This balance involves the consideration of factors such as (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.* These factors are not exclusive; in assessing reasonableness, courts examine the totality of the circumstances and consider "whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*." *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994). As noted above, reasonableness determinations must allow for the fact that police officers are often forced to make "split-second judgments in circumstances that are tense, uncertain and rapidly evolving." *Graham*, 490 U.S. at 397. In assessing reasonableness, the extent and severity of plaintiff's injuries can be a factor in determining whether the force administered was excessive, particularly if the suspect posed no physical threat to anyone. *See Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) ("[A] jury could reasonably conclude that there was little or no need for the application of force against Santos and that in light of his serious injury, the force used was both substantial and excessive.").

It is undisputed Ms. Hurtado committed a crime. Ms. Hurtado pled *nolo contendere* to charges of resisting arrest and disturbing the peace. Req. Jud. Not. at 4. However,

Deputy Cuneo does not contend Ms. Hurtado's crime was severe. No reasonable factfinder would conclude Ms. Hurtado was particularly aggressive or threatening when circling around the couch before Deputy Cuneo used it to barricade her.

In the same vein, no reasonable factfinder would conclude Ms. Hurtado's actions threatened officer or bystander safety. At no time did Ms. Hurtado physically or verbally threaten Deputy Cuneo, even if she may have been uncooperative in the face of Deputy Cuneo's orders. The undisputed material facts do not establish Ms. Hurtado posed a potential threat to deputies' or others' safety, much less an "immediate threat." *See Mattos v. Agarano*, 661 F.3d 433, 444 (9th Cir. 2011) (plaintiff's lack of cooperation did not pose a threat to officer safety).

Regarding whether Ms. Hurtado was "actively resisting arrest," a reasonable factfinder could conclude that in circling the couch, Ms. Hurtado was evading arrest. Mot. at 7. Ms. Hurtado's evasion or resistance to arrest, however, did not involve any violence or threat of violence toward the deputies or to bystanders. The nonviolent or nonthreatening nature of the crime at issue makes it more likely a reasonable factfinder could find Deputy Cuneo's use of force was unjustified.

However, the court must examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*. *Mattos*, 661 F.3d at 445. At the time Deputy Cuneo pushed the couch in an attempt to barricade Ms. Hurtado, there were several people in the room, some of whom were yelling. UMF No. 24. These facts evidence a tense, rapidly evolving situation in which Deputy Cuneo may have been forced to make a split-second judgment as to the amount of force properly administered. This reasonably justifies his use of some force. *See Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010) (holding rapidly evolving situation justified the use of force).

Even where split-second judgment calls are required, and "not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers" is a violation of the Fourth Amendment, *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001) (citation omitted), it is equally true that even where some force is justified, the amount actually used may be excessive, *P.B. v. Koch*, 96 F.3d 1298, 1303–04 (9th Cir. 1996). Here, it is a disputed issue of

fact whether Deputy Cuneo pushed the couch into the wall or directly into Ms. Hurtado. Deputy Cuneo does not address Ms. Hurtado's deposition testimony regarding the injuries she says she suffered as a result of his actions in pushing the couch. Specifically, Ms. Hurtado stated she sustained several injuries, including a head concussion, bruising to her chest, bruising to her back, contusions, and dizziness. Pl. Depo. at 60:8–9, 79:11–24. No evidence in the record allows the court to conclude those injuries arose only and entirely as a result of Deputy Cuneo's first push. Evidence of Ms. Hurtado's injuries, in addition to evidence of Deputy Cuneo's shoving the couch toward her, may allow a jury to conclude Deputy Cuneo's force was excessive. That this conclusion is possible precludes a finding of summary judgment.

        C.        Qualified Immunity

Even if the force was unreasonable, the doctrine of qualified immunity can protect a government official from suit. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A government official such as Deputy Cuneo may be immune from liability insofar as his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.*

The qualified immunity test is two-fold. Under one prong, the court considers whether alleged facts, taken in the light most favorable to plaintiff, show defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under the second prong, the court determines whether the constitutional right was "clearly established." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If no constitutional right was violated, defendant is entitled to qualified immunity without further analysis. *Hopkins v. Bonvicino*, 573 F.3d 752, 762 (9th Cir. 2009) ("If the alleged conduct did not violate a constitutional right, then the Defendants are entitled to immunity and the claim must be dismissed."). Courts in their sound discretion can address the two prongs in any order. *Pearson*, 555 U.S. at 236.

Under the "clearly established" prong, the touchstone question is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009) ( "[T]he . . . question in this case is, was the law such that it should have been clear to Detective Rogers that he was required *in the situation*

12

*he confronted* to give pre-deprivation and post-deprivation notice to an absent father." (emphasis in original)). For purposes of qualified immunity, the right at issue must be defined at "the appropriate level of generality . . . [the court] must not allow an overly generalized or excessively specific construction of the right to guide [its] analysis." *Cunningham v. Gates*, 229 F.3d 1271, 1288 (9th Cir. 2000); *see Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ("We have repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." (citation omitted)); *Thomas v. Dillard*, __ F.3d __, 2016 WL 1319765, at *16 (9th Cir. 2016) (noting Supreme Court's admonition).

Here, the court has concluded above that no violation arose from Deputy Cuneo's push of Ms. Hurtado to the ground. Accordingly, the court need not consider Deputy Cuneo's entitlement to qualified immunity with regard to the first push. Deputy Cuneo's push of the couch, however, is an issue properly considered under the qualified immunity analysis. Deputy Cuneo argues he is entitled to qualified immunity because his actions were "neither incompetent, not a knowing violation of the law." Mot. at 9. In support, Deputy Cuneo cites *Taylor v. Barkes*, ___ U.S. ___, 135 S. Ct. 2042, 2044 (2015), for the proposition that "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *See* Mot. at 8. As noted above, there is a genuine dispute of material fact as to the circumstances surrounding Deputy Cuneo's push of the couch, and whether Deputy Cuneo pushed the couch into the wall or directly into Ms. Hurtado. While use of the couch solely as a barricade to hem Ms. Hurtado in might well avoid liability, a jury could find that using the couch as an instrument to harm Ms. Hurtado violated her constitutional rights. If a jury believes Hurtado's narrative, Deputy Cuneo would not be entitled to qualified immunity given that it was clearly established law at the time of the events that where there is no need for force, the use of force, including the form of a push greater than necessary, is objectively unreasonable. *See, e.g., Jimenez*, 174 Fed. Appx. at 404; *Cable v. City of Phoenix*, __ Fed. Appx. __, 2016 WL 1380913, at *2 (9th Cir. 2016).

Defendant's motion in this respect is DENIED.

/////

/////

VI. CONCLUSION

       For the foregoing reasons, this court GRANTS defendant's motion for summary judgment with respect to plaintiff's first claim of excessive force.  The court DENIES the defendant's motion for summary judgment as to plaintiff's second claim of excessive force.

       IT IS SO ORDERED.

DATED: April 12, 2016.

_____
UNITED STATES DISTRICT JUDGE